O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON MICHAEL ROY, | ) NO. EDCV 13-0768-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) AND ORDER ) ) ) |
| Defendant. | ) |

Plaintiff filed a Complaint on April 25, 2013, seeking review of the denial of plaintiff's application for supplemental security income ("SSI"). On May 28, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on January 6, 2014, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for SSI on June 20, 2011. (Administrative Record ("A.R.") 22.) Plaintiff, who was born on June 1, 1954, claims to have been disabled since February 1, 1999, due to human immunodeficiency virus ("HIV") and acquired immune deficiency syndrome ("AIDS") conditions. (A.R. 68, 179, 192, 196.) Plaintiff has no past relevant work. (A.R. 31.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing. (A.R. 22.) On August 6, 2012, plaintiff, who was represented by counsel, appeared, and testified at a hearing before Administrative Law Judge Jesse J. Pease (the "ALJ"). (A.R. 36-67.) Vocational expert Aida Washington also testified at the hearing. (*Id.*) On August 17, 2012, the ALJ denied plaintiff's claim (A.R. 22-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-7). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since June 20, 2011, the application date. (A.R. 24.) The ALJ determined that plaintiff has the severe impairments of HIV infection, hepatitis C, and a psychotic disorder, not otherwise specified. (*Id.*) The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 C.F.R. § 416.967(c) except that mentally [plaintiff]

can perform simple, routine, nonpublic tasks with only occasional interpersonal contact with others.  Occasional is defined as one-third of the workday.

(A.R. 26.)   In making this finding, the ALJ considered the subjective symptom testimony of plaintiff and his daughter, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record.  (A.R. 26-31.)

Based on plaintiff's age,[1] education,[2] work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of hand packager, linen room attendant, and cleaner II.  (A.R. 31.)

Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since June 20, 2011, the date his application was filed.  (A.R. 32.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (reversal is warranted "only if the ALJ's decision was not supported by substantial evidence as a whole or if the ALJ applied the wrong standard").  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from

---

[1]   On June 20, 2011, plaintiff was an individual of advanced age.  (A.R. 31.)

[2]   The ALJ determined that plaintiff "has at least a high school education and is able to communicate in English."  (A.R. 31.)

the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff claims that the ALJ erred in: (1) rejecting the opinion of consultative psychiatrist Dr. Khushro Unwalla; and (2) finding that plaintiff could perform medium work despite his impairments of HIV and hepatitis C. (Joint Stipulation ("Joint Stip.") at 5.)

## I. Reversal Is Not Warranted Based Upon The ALJ's Treatment Of The Opinion Of Dr. Unwalla.

Plaintiff asserts the ALJ erred in rejecting the mental functional limitations assessed by Dr. Khushro Unwalla, a consultative/examining psychiatrist. (Joint Stip. at 5-10.)

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. § 416.927(c). It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 416.927(c).

When an examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, an examining physician's opinion may be rejected only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician." Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, the Ninth Circuit has made clear that it is not error for the Commissioner to reject the opinion of an examining physician, and to rely on the opinion of a nonexamining physician, when the opinion of the examining physician is contradicted by and/or conflicts with other evidence of record and the opinion of the nontreating source is supported by other evidence. *See* Lester, 81 F.3d at 831

(collecting cases); *see also* Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) ("An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence."); Andrews, 53 F.3d at 1041 ("when it is an examining physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Under the Social Security regulations, the opinions of consultative psychiatrists and State Agency reviewing psychologists both constitute "medical opinions" that must be evaluated pursuant to the rules for according weight to medical opinions set forth above. *See, e.g.,* 20 C.F.R. § 416.913(a)(1) (b) (acceptable medical sources include licensed or certified psychologists) and § 416.927(a)(2) & (e) (defining medical opinions as "statements from physicians and psychologists and other acceptable medical sources," which includes nonexamining sources such as State agency psychologists); *see also* Lester, 81 F.3d at 830 n.7 (explaining that, for purposes of the above-noted standards for ascribing weight to physician opinions, the use of the term "physician" encompasses "psychologists and other health professionals who do not have M.D.'s"; citing 20 C.F.R. § 404.1527, the parallel provision (with respect to disability insurance benefits) to 20 C.F.R. § 416.927 (for SSI)).

On November 18, 2011, Dr. Unwalla conducted a consultative psychiatric evaluation of plaintiff. (A.R. 309-12.) Dr. Unwalla described plaintiff as: exhibiting a normal posture, gait, and psychomotor activity, with no evidence of involuntary movements; engaged and cooperative, and able to establish a good rapport; displaying good eye contact; alert and oriented to place, time, and situation; able to concentrate; and possessing an adequate fund of knowledge. (A.R. 309, 311.) Plaintiff did not exhibit any evidence of auditory or visual hallucinations, delusions, or illusions, and he did not report any obsessions, compulsions, or paranoia. (A.R. 311.) Plaintiff

Case 5:13-cv-00768-MAN   Document 13   Filed 07/15/14   Page 7 of 17   Page ID #:438

denied any suicidal ideation. Plaintiff's thought processes were "linear and goal-directed, without looseness of associations, flight of ideas, racing thoughts, thought insertions, thought withdrawal, or thought broadcasting," although plaintiff's speech "exhibit[ed] thought blocking with slow and deliberate rate and rhythm" and he answered questions mechanically. (*Id.*) Plaintiff's mood was depressed and flat; his affect was flat, reactive, and dysphonic; he reported poor sleep and appetite; "and is controlled by medication." (A.R. 309, 311.) Dr. Unwalla stated, without explanation, that plaintiff's insight and judgment are "impaired." (A.R. 311.) Dr. Unwalla diagnosed plaintiff with schizoaffective disorder and assessed a GAF score of 48.[3] (A.R. 311-12.)

The ALJ discussed Dr. Unwalla's opinion in detail, but ultimately gave greater weight to the opinion of Dr. Kim Morris, a State agency reviewing psychologist, in determining plaintiff's mental functional limitations. The Court concludes that this does not constitute reversible error, for the following reasons.

As an initial matter, plaintiff's argument that the ALJ was required to give "clear and

---

[3] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000). A GAF rating of 41–50 reflects "[s]erious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." *Id.* at 34.

The ALJ gave little weight to Dr. Unwalla's GAF score of 48 (A.R. 28-29), and plaintiff apparently does not contest this. Even if plaintiff did, however, there was no error. The ALJ characterized GAF scores as "subjectively assessed scores [that] reveal only snapshots of impaired and improved behaviors and state nothing in terms of function-by-function capacity or limitations." (A.R. 28.) This was a specific and legitimate reason, because a GAF score is not determinative of a mental disability for social security claim purposes. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-50765 (August 21, 2000)("We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs. . . . [The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings"). Nor is it an "absolute determiner of an ability to work." Lewis v. Barnhart, 460 F. Supp. 2d 771, 785 (S.D. Tex. 2006); *see also* Howard v. Commissioner, 276 F.3d 235, 241 (6th Cir. 2002)(rejecting the claimant's argument that the ALJ, when determining her RFC, improperly failed to consider the GAF score assessed by her treating physicians, reasoning that, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

convincing" reasons for discounting Dr. Unwalla's opinion is incorrect. (Joint Stip. at 7.) As discussed below, Dr. Unwalla and Dr. Morris opined that plaintiff had different mental limitations, and thus, their opinions were contradictory. Accordingly, the ALJ's decision was not erroneous as long as the ALJ provided "specific and legitimate reasons" supported by substantial evidence. Lester, 81 F.3d at 831; Andrews, 53 F.3d at 1041-42.

Dr. Unwalla assessed significant mental functional limitations for plaintiff, finding that he would: be unable to perform work activities on a consistent basis without special or additional supervision; have marked limitations completing a normal workday or workweek; have marked limitations accepting instructions from supervisors and interacting with coworkers and the public; and be unable to handle the usual stresses, changes and demands of gainful employment. (A.R. 312.) The ALJ gave "little weight" to these limitations, for two reasons.

First, the ALJ noted that -- as set forth repeatedly in Dr. Unwalla's report itself (*see* A.R. 309, 312) -- plaintiff's symptoms based on his mental condition were "currently controlled by medications." (A.R. 29.) As the ALJ correctly noted, plaintiff stated, in September 2011, that he was doing well on his current medication regimen, and "[o]ne of the last clinical notes in December 2011 [citation omitted] state[s] that [plaintiff] is feeling and functioning well on current medication with no side effects." (A.R. 28, citing A.R. 266, 316) Dr. Unwalla's examination, which occurred between the dates of these two medical records, indicated a consistent finding, *i.e.,* that adverse effects from plaintiff's mental condition were being controlled by his medication. Indeed, there is ample evidence in the record indicating that plaintiff's psychiatric medications were helping with his symptoms and that he was doing well on his medications. (*See* A.R. 312, 315-26). Thus, the ALJ's first finding was a specific and legitimate reason to give little weight to the mental limitations assessed by Dr. Unwalla. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *see also* Allen v. Comm'r of Soc. Sec., 498 Fed. Appx. 696, 697 (9th Cir. Nov. 19, 2012) (because the claimant's mental

impairment could be adequately controlled by medication, it was not severe); 20 C.F.R. § 416.929(c)(3)(iv) (the ALJ may consider the effectiveness of medication in evaluating the limiting effects of an impairment).

Second, the ALJ gave the mental limitations assessed by Dr. Unwalla little weight, because the ALJ found them to be inconsistent with Dr. Unwalla's report. (A.R. 29.) Specifically, the ALJ noted Dr. Unwalla's findings that plaintiff: exhibited only mild difficulty in interacting with the clinic staff and doctor; had no difficulty maintaining composure and an even temperament; had some difficulty maintaining concentration, persistence and pace, but was able to register 3 out of 3 items at zero minutes and 3 out of 3 items at five minutes; was able to do serial sevens and threes; was able to spell the word "world" forward and backward; and, finally, was noted by the doctor to be "intellectually and psychologically capable of performing activities of daily living." (*Id.*; see A.R. 311-12.) Further, Dr. Unwalla's report indicated that plaintiff was in no apparent distress, maintained good eye contact, and was able to establish rapport with the examiner. (*Id.*) Dr. Unwalla found that plaintiff could focus and maintain attention for short periods of time, did not exhibit auditory and visual hallucination, and was "alert and oriented to person, place, time, and situation." (*Id.*)[4] The second reason proffered by the ALJ for giving little weight to Dr. Unwalla's assessed mental limitations also was specific and legitimate. *See* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1995) (internal inconsistencies within a physician's report supports the decision to discount the physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permissibly rejected treating physician's opinion containing contradictory observations); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cor. 1989) (when treating physician's opinion was inconsistent with his medical noted, as well as the claimant's activity, this was a clear and convincing reason to reject it).

---

[4] Dr. Unwalla's finding that plaintiff "has negative symptoms suggestive of chronic psychosis" (A.R. 309) is at odds with his findings that plaintiff: did not exhibit any evidence of hallucinations, delusions or illusions; did not report obsessions, compulsions or paranoia; denied suicidal or homicidal ideations, plans or intent; and is controlled by, and doing well on, his medications.

In determining plaintiff's mental RFC, the ALJ gave "great weight" to the opinion of Dr. Morris. (A.R. 30.) The ALJ acknowledged that, generally, the opinions of non-examining medical sources are entitled to less weight than those of treating and examining sources, but observed that there are a number of facts that, in a particular case, can warrant giving greater weight to the opinion of a non-examining source. (*Id.*) The ALJ concluded that such circumstances existed in plaintiff's case, because Dr. Morris's opinion is "well supported by the objective medical evidence and is consistent with the record as a whole" and, thus, was entitled to greater weight than the limitations assessment by Dr. Unwalla, (*Id.*) The ALJ's finding was specific and legitimate, as well as supported by substantial evidence, for the following reasons.

Unlike Dr. Unwalla, Dr. Morris considered plaintiff's medical record. (A.R. 69-73.)[5] Dr. Morris concluded that Dr. Unwalla's opinion should be given little weight, because it was based on inconsistent and inaccurate reporting by plaintiff.[6] Dr. Morris opined that plaintiff: had mild functional limitations with respect to activities of daily living, maintaining social functioning, maintaining concentration, persistence and pace, and no repeated episodes of decompensation; and could "complete simple tasks with a moderate limitation in adaptation." (A.R. 73.) Dr. Morris observed that, based on the medical evidence of record, plaintiff had a positive response to treatment and, although plaintiff had a history of psychotic features, he had not experienced any in years. (*Id.*) Indeed, the record contains ample evidence supporting Dr. Morris's findings, including plaintiff's repeated statements, throughout April through December 2011, that he

---

[5] It is significant to note that, unlike Dr. Morris, Dr. Unwalla based his assessment on an incomplete picture of plaintiff's condition, because as Dr. Unwalla conceded, "[t]here were no medical records available for review" at the time he examined plaintiff. *See* Nalley v. Apfel, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000) ("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner").

[6] Dr. Morris noted that Dr. Unwalla accepted plaintiff's assertions, which were unsupported by the record, that he had been diagnosed with schizoaffective disorder and was experiencing psychotic features, *i.e.,* as Dr. Unwalla put it, plaintiff "has negative symptoms suggestive of chronic psychosis." (A.R. 73, 309.) Dr. Morris discussed an October 19, 2011 treatment note -- *i.e.,* one month before Dr. Unwalla's evaluation -- which indicated that plaintiff claimed to be "hearing voices," but "when confronted about this admitted he had not heard any in years." (A.R. 73, referencing A.R. 321.)

currently was not depressed or paranoid, was not experiencing any psychotic features such as auditory hallucinations,[7] and was doing well on his medication. (*See* A.R. 268-74, 285, 315-26.)

Dr. Morris gave "[l]arge weight" to an October 20, 2011 Medical Disorder Questionnaire Form ("MDQF") completed by licensed clinical social worker Brian Cunningham ("Cunningham"), finding that it was consistent with plaintiff's treatment notes. (A.R. 73.) In the MDQF, Cunningham noted that he first examined plaintiff on June 28, 2011, and saw plaintiff one to two times per month; the record shows that Cunningham continued to see plaintiff through 2011 and into early 2012. (A.R. 268-72, 289, 315-22.) Cunningham noted plaintiff's earlier diagnosis of a mood disorder, not otherwise specified, and a psychotic disorder, not otherwise specified. (A.R. 289; *see* A.R. 273-74, 324-25.) He assessed plaintiff with a GAF score of 60, which indicates moderate symptoms, such as those that would affect speech or reflect moderate difficulty in social, occupational, or school functioning. DSM–IV–TR, at 34. Cunningham noted plaintiff's statement that he "began hearing voices at the age 42," and the "voices were telling him to kill himself," but also noted plaintiff represented that he "has not heard voices in two years, [and] he is not currently depressed or paranoid." (A.R. 285; *see also* A.R. 286: "He denies any recent depression.") Cunningham observed that plaintiff: presented with appropriate affect, even if guarded at times; was oriented to person, place, situation, and time; had an intact memory, both

---

[7] The Court notes that, at the August 2012 hearing, plaintiff testified to having a substantial difficulty in functioning in general, because of voices he heard on a daily basis. Plaintiff testified that: he had difficulty performing chores and tasks, watching television, riding the bus, and going out walking, and that he does not sleep much at night due to auditory hallucinations; and his medications merely "slows it down." (A.R. 50, 52-53, 55, 63.) Plaintiff did not explain why he repeatedly told numerous physicians and his treating clinical social worker that he was *not* experiencing any such hallucinations and had not done so for years -- including denying experiencing any hallucinations as recently as March and April 2012 (*see* A.R. 315, 320) -- and was doing very well on his medications. Plaintiff also did not explain the discrepancy between his hearing testimony that, due to the distracting nature of the voices he heard, he could not watch television for more than 20 minutes and would turn the television off (A.R. 63) *and* the statements both he and his daughter made in their respective Function Reports that plaintiff watches television and listens to the radio from the moment he gets up until he goes to bed at night (A.R. 202, 211). While the ALJ acknowledged plaintiff's testimony about hearing voices (A.R. 26), he did not credit it. Plaintiff does not contend that the ALJ erred in failing to credit this testimony, presumably because, given that the testimony is wildly inconsistent with the medical evidence of record and plaintiff's own prior statements, it was not error for the ALJ to discount it.

recent and remote; had fair concentration; could manage funds on his own; and could communicate. (A.R. 286. 288.) Plaintiff recently presented with depressed affect apparently due to a family issue, but he did not have any current psychotic symptoms, including hallucinations. (A.R. 287-88.) Cunningham found that plaintiff had no difficulties in the area of concentration and task completion; however, it appeared that he would not adapt to stress well and, like most parolees, had some issues with authority. (A.R. 288.)

The 2011 treatment notes prepared by a treating psychiatrist (Dr. John Benson) and Cunningham, as well as by Sofia Carranza, MA and MFT, as a whole, are consistent with the MDQF and with Dr. Morris's December 2011 opinion regarding plaintiff's mental limitations. On numerous occasions in 2011, upon mental status examination, plaintiff, *inter alia*: was "[a]lert, in good contact and sensorium clear;" was oriented in all spheres; exhibited no symptoms of psychosis, audio/visual hallucinations, or paranoia; denied having any hallucinations or delusions or hearing voices; denied any paranoia or depression; displayed no formal thought disorder; and displayed a thought process that was goal directed, intact, and linear, and a thought content that was appropriate, coherent, and within normal limits. (A.R. 273 (4/13/11); 274 (6/28/11); 269-70 (7/25/11); 268-69 (9/21/11); 268 (10/19/11); 317 (11/30/11).) Treatment notes post-dating Dr. Morris's opinion are consistent. (*See* A.R. 316 (12/19/11); 316 (1/10/12); 315 (3/15/12).)

In sum, Dr. Morris's opinion is consistent with the record as a whole *and* is supported by other evidence in the record, and therefore, the opinion of Dr. Morris constitutes substantial evidence. Given the internal inconsistencies in Dr. Unwalla's opinion and that his findings regarding plaintiff's limitations are contradicted by the medical evidence of record, it was not error for the ALJ to give Dr. Unwalla's opinion little weight, based upon the specific and legitimate reasons stated by the ALJ, and to give Dr. Morris's opinion greater weight. *See* Roberts, 66 F.3d at 184 (no error in ALJ's reliance on the opinion of a nonexamining, nontreating psychologist's opinion, rather than the opinion of consultative/examining neuropsychologist, in assessing the claimant's mental RFC when the nonexamining psychologist's opinion rested on

neuropsychological test scores contained in the record and the examining neuropsychologist's opinion conflicted with those test results and his written report). Accordingly, the first issue proffered by plaintiff does not establish reversible error.

## II. The ALJ's Finding That Plaintiff Could Perform Medium Work Despite His Impairments of HIV Infection And Hepatitis C Does Not Warrant Reversal.

Plaintiff contends the ALJ's finding that he could perform medium work is not supported by substantial evidence in the record, because the ALJ relied on "no affirmative medical evidence whatsoever of [plaintiff's] physical capacity."[8] (Joint Stip. at 18-19.) Plaintiff argues that no treating or examining physician ever assessed plaintiff's physical RFC, and thus, the ALJ lacked any evidentiary basis for assessing plaintiff's physical RFC and should have developed the record either by re-contacting treating sources or ordering a consultative examination. (*Id.* at 19.)

On July 18, 2012, a state agency reviewing physician (F. Kalman, M.D.) assessed plaintiff as having a physical RFC of heavy/very heavy work. (A.R. 90-91.) At the August 6, 2012 hearing, the ALJ asked plaintiff to identify the physical problems he had as a result of his claimed

---

[8] To the extent plaintiff argues that the ALJ committed legal error by finding at step two that plaintiff's HIV and hepatitis C were "severe" and then failing to incorporate the limitations resulting from those impairments into the ALJ's final construction of plaintiff's RFC, plaintiff fails to appreciate that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir.1996). "The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). In any event, as discussed herein, plaintiff fails to identify medical evidence establishing that he suffered from any physical limitations as a result of HIV and hepatitis C. Thus, the ALJ did not commit any legal error in finding that HIV and hepatitis C are severe impairments at Step Two but finding that there were no corresponding limitations in plaintiff's RFC. *See* Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228–29 (9th Cir.2009) (rejecting the claimant's argument that the ALJ failed to account for her mental disorder, which the ALJ had found to be severe at step two, in the final construction of her RFC, and noting the lack of "authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities").

impairments. The sole physical limitation plaintiff claimed was that it was "hard to pick up things" and he could not "pick up more than 20 pounds of stuff." (A.R. 46, 48.) The ALJ found much of plaintiff's subjective complaint testimony to lack credibility -- a finding that plaintiff does not contest here.

The ALJ concluded that assessing a medium work physical RFC gave plaintiff the benefit of the doubt based upon his subjective complaints. (A.R. 27.) The ALJ explained that he reached this conclusion based upon the following factors, none of which are disputed by plaintiff. The medical records show that, although plaintiff suffered from HIV infection, his condition was stable and under control. (A.R. 27, citing A.R. 235 (plaintiff's statement that he had been told by his treating sources that his condition was "stable"), A.R. 254 (February 8, 2011 treatment note listing plaintiff's HIV condition as stable), and A.R. 251 (January 5, 2011 treatment note describing plaintiff's HIV status as under good control.)  The ALJ noted some of the numerous medical records in which plaintiff had advised medical providers that he was "doing well on his current regimen," had no problem with medications, and had "no complaints," and on examination, he was "noted to be in no apparent distress." (A.R. 27; *see, e.g.,* A.R. 251-53, 255-58.) As the ALJ correctly noted, the medical records shows that plaintiff's CD4 repeatedly was found to be "good," and increased significantly during the first half of 2011. (A.R. 27; *see* A.R. 247, 249, 258, 293.) As for plaintiff's hepatitis C, the ALJ noted that, based upon the medical record, there was "no evidence of liver decompensation, ascites, spider hamangiomas, jaundice, palmar erythema, asterisis, or tremors" and his "[m]otor, gait, and station [we]re all within normal limits with no abnormal movements." (A.R. 28.) The ALJ also noted that, in his Disability Report submitted in connection with his request for reconsideration, plaintiff stated there had been no change in his illness, condition, or daily activities since he submitted his July 6, 2011 Disability Report. (A.R. 27; *see also* A.R. 221, 223.)

Here, plaintiff does not identify any medical evidence establishing physical limitations he believes may exist due to his HIV infection and hepatitis C. Indeed, plaintiff so much as concedes

that there is no medical evidence that would support a finding that plaintiff has physical limitations stemming from his HIV infection and hepatitis C. (*See* Joint Stip. at 19, stating that there is a "total absence of medical evidence" regarding plaintiff's physical limitations.)

Plaintiff's second issue arguments ignore the fundamental rule that the claimant bears the burden of proving that he is disabled. *See, e.g.,* Bayliss, 427 F.3d at 1217; Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); *see also* 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.921(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled".). The Court has reviewed the medical evidence of record before the ALJ, including the numerous medical records pertaining to plaintiff's treatment for his HIV infection. In the medical records, there is no indication that plaintiff ever mentioned or complained that his ability to lift was impaired, much less limited to no more than 20 pounds, as he claimed at the hearing. Prior to the hearing, both plaintiff and his daughter submitted Function Reports. Plaintiff and his daughter checked the boxes indicating that plaintiff's illness affects his ability to, *inter alia*, lift, stand, reach, walk, etc., but they both failed, as the form directed, to explain such limitations, including identifying how many pounds he can lift or how far he can walk. (A.R. 207, 216.) In his HIV Questionnaire, plaintiff claimed that he suffers from fatigue that requires him to take one-to-two hour naps twice a day. (A.R. 277.) The ALJ acknowledged these statements by plaintiff and his daughter but discounted the credibility of these subjective symptom statements, noting, *inter alia*, that the medical records showed that plaintiff: did not display, and denied, experiencing fatigue; stated that his energy level was good; and was able to walk two miles to his consultative examination. (A.R. 26-27.)[9] Plaintiff does not

---

[9] The medical record supports the ALJ's conclusions. *See, e.g.,* A.R. 257 - June 17, 2011 HIV Clinic progress note, in which plaintiff reported that he had no complaints with respect to his HIV infection status; A.R. 274 - June 28, 2011 medical examination notes, in which plaintiff stated that his energy level was good; A.R. 268-69 - July 25, 2011, and September 21, 2011 reports by plaintiff to treating physician Dr. Benson that plaintiff's sleep was good; A.R. 281 - August 11, 2011 physician statement indicating that plaintiff did not appear to be chronically ill

challenge the ALJ's adverse credibility findings.

In any event, the statements of plaintiff and his daughter alone would not be sufficient to establish that plaintiff is limited to lifting no more than 20 pounds, given the lack of objective medical evidence that might support his subjective claim. *See* 20 C.F.R. § 416.929(a). The medical evidence simply does not support plaintiff's contention that he is unable to perform medium level work. The mere fact that plaintiff has the impairments of HIV infection and hepatitis C is not, by itself, sufficient to establish disability or to show that plaintiff cannot perform medium level work. There must be proof of the impairment's disabling severity. *See, e.g.,* Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982); *see also* 42 U.S.C. § 1382c(a)(3)(C)(i) (the claimant must have a medically determinable impairment that results in marked and severe functional limitations). Here, the ALJ took plaintiff's statements into consideration and, giving plaintiff the benefit of the doubt, assessed plaintiff with a physical RFC that was less strenuous than the heavy/very heavy RFC assessment made by the state agency reviewing physician. This was a reasonable interpretation of the evidence. It also was arguably more generous to plaintiff than the evidence suggested was appropriate, given plaintiff's failure to adduce any evidence, other than his own statements and those of his daughter, that his HIV infection and hepatitis C cause him to suffer from physical functional limitations that impair his ability to work.

The Court notes plaintiff's contention that the ALJ was obligated to develop the record on the question of plaintiff's physical RFC. Plaintiff ignores the fact that a state agency physician did render a physical RFC finding. In any event, an ALJ's duty to develop the record is triggered only when the medical evidence of record is so conflicting, ambiguous, or inadequate that the ALJ cannot make a disability determination. *See* Mayes, 276 F.3d at 459–60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record

---

or visibly fatigued; A.R. 309 - Dr. Unwalla's November 18, 2011 report that plaintiff walked two miles to the examination; A.R. 255 - November 22, 2010 progress note indicating that plaintiff had no acute complaints or fatigue and exercised by walking a half mile a day.

is inadequate to allow for proper evaluation of the evidence."); *see also* Bayliss, 427 F.3d at 1217. The evidence before the ALJ was not ambiguous; rather, the only arguable "evidence" was the statements of plaintiff and his daughter, which the ALJ, without challenge, has found to be less than credible. Plaintiff simply failed to meet his burden of providing *any* evidence that, as a result of his HIV infection and hepatitis C, he suffers from a physical impairment which renders him disabled. The ALJ, thus, was not obligated to further develop the record on this issue. Accordingly, there is no basis for reversing the ALJ's decision. *See* Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997) ("the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). Plaintiff's second issue does not warrant reversal.

## CONCLUSION

For all of the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 15, 2014

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

17